SMITH v. THOMPSON, Guardian, etc., et al., Appellants.

Division One, October 14, 1902.

1. **Homestead:** ABANDONMENT AFTER JUDGMENT. Although the land
in question may be a homestead at the date of a general judgment
against the owner, yet if after that, but before execution is issued,
he abandons it as a homestead, with no purpose of returning and
with no intention of ever resuming occupation of it, the sale under
such execution carries the title; and a deed thereafter by the
execution debtor and his wife does not carry the title.

2. ——: ——: PLEADING. Where the petition, in a suit to en-
join the sale of land under a deed of trust, sets out a state of facts
from which the law draws the conclusion that the judgment under
which the sale was made and through which plaintiff's title comes,
was a lien on the land prior to the deed under which defendant
claims, and defendant by a plea of confession and avoidance alleges
that at the date of the judgment, and of the deed and of the execu-
tion and sheriff's sale, the land was the homestead of the judgment
debtor and not subject to the judgment lien, the issue of whether
or not the land was a homestead is sufficiently pleaded by a reply
which joins issue on the new matter pleaded in the answer.

3. ——: ——: WHEN JUDGMENT LIEN ATTACHES. The land consti-
tuting a homestead becomes subject to the lien of a judgment pre-
viously rendered as soon as it is abandoned by the judgment debtor
as a homestead.

4. ——: ——: ——: NOTICE OF LEVY. Section 3178, Revised
Statutes 1899, requiring the sheriff to file with the recorder a
notice of the levy of an execution before the same shall be a lien

Smith v. Thompson.

on "any real estate to which the lien of the judgment does not extend," does not refer to real estate in the county in which the judgment was rendered, nor to real estate under cover of a homestead, for while it is so covered it is not subject to the execution and can not be made so by any act of the sheriff.

5. ———: ———: NOTICE TO HOMESTEADER. If the defendant in execution has no right of homestead in the land about to be sold by the sheriff, it is not the sheriff's duty to inform him that he has a homestead right therein. So that if the homesteader has abandoned his homestead the statute requiring the sheriff to notify the defendant of his homestead rights has no application.

Appeal from Grundy Circuit Court.—*Hon. A. H. Burkeholder,* Special Judge.

AFFIRMED.

*W. G. Callison* and *J. T. DeVorss* for appellants.

(1) The court erred in finding that the land in controversy was subject to sale and execution under the judgment in favor of the city of Trenton against F. M. DeVorss. Duffy v. Willis, 99 Mo. 229; Foreman v. Meroney, 18 Mo. 429; Porter v. Clarke, 18 Mo. 425; Thompson on Homesteads, sec. 287. (2) The court erred in finding that the land in controversy was not the homestead of DeVorss at the time of the levy and sale, or at the time of the rendition of the judgment. 12 Am. and Eng. Ency. of Law, 108, and authorities there cited; Freeman on Executions, sec. 218 and 335; Peake v. Cameron, 102 Mo. 569. (3) Under the undisputed evidence in this case, DeVorss had acquired a homestead estate in the land at the date of the judgment, and the court erred in finding that DeVorss had abandoned his homestead at the time of, or prior to, the levy; hence, it was not subject to execution and sale. Duffey v. Willis, supra; Potts v. Davenport, 79 Ill. 456; Davis v. Land, 88 Mo. 436. (4) The court erred in finding that the sale made by the sheriff in

pursuance of the execution issued on the judgment against DeVorss was legal, and that his deed thereunder conveyed any title to plaintiff adverse to defendant. Vogler v. Montgomery, 54 Mo. 577; Rorer on Judicial Sales, sec. 602; Davis v. Green, 102 Mo. 180. (5) The court erred in admitting testimony offered by plaintiff tending to show abandonment of homestead by DeVorss after the execution of the deed of trust by DeVorss to defendant Thompson. Davis v. Green, supra; Rorer on Judicial Sales, supra; Miller v. Finn, 1 Neb. 254; Boyd v. Longworth, 11 Ohio 235.

*Harber & Knight* for respondent.

(1) In order for F. M. DeVorss to have a homestead in the premises in question as against the judgment under which respondent claims, it must have appeared from the testimony that prior to the rendition of the judgment, and the accruing of the cause of action upon which said judgment was rendered, DeVorss had a deed therefor and that the same had been duly filed for record in the office of the recorder of deeds of Grundy county, Missouri. No such evidence appears or was offered. R. S. 1899, sec. 3622; Loring v. Groomer, 142 Mo. 1; Berry v. Ewing, 91 Mo. 395; O'Shea v. Payne, 81 Mo. 516; Payne v. Fraley, 165 Mo. 191; Acreback v. Myer, 165 Mo. 685. (2) The evidence clearly shows that after the judgment against him and long prior to the levy and sale, and at least twenty-five days before the deed of trust in controversy was given, F. M. DeVorss and his entire family had removed from the premises in controversy, and rented the same for an indefinite length of time with no intention of again occupying the same. Hence, if other prerequisites of a homestead had then existed under the evidence in this case there was clearly an abandonment thereof at the time. St. Louis Brewing Ass'n v. Howard, 150 Mo. 445. (3) From 1889 there

was no such occupancy of the premises in question as to authorize any claim thereon to be made under the homestead law. Such occupancy must be "A visible occupancy of the premises as the head of a family at the time of the levy of the writ." St. Louis Brewing Ass'n v. Howard, supra. (4) Respondent's rights are based on the fact that DeVorss at the time of the levy and sale had no homestead rights. Hence, if DeVorss had no homestead rights in the lands in controversy, the failure of the sheriff to go into another county to notify him of his exemptions and his failure to file a notice of levy in the office of the recorder of deeds of Grundy county, can not affect respondent's rights in the premises, as the judgment against him in favor of the city of Trenton, was as much a lien upon the lands in controversy as it would have been upon land owned by DeVorss in Grundy county and upon which he had never resided. Here the judgment had been a lien at least from the date of his abandonment of the premises in February, 1897, nearly nine months prior to the levy upon the land, and respondent respectfully insists that even prior to his moving away in 1897, the testimony not only fails to show the filing of any deed to the premises now claimed as DeVorss's homestead, but it also fails to show any such state of facts as would warrant this court in finding that he ever had a homestead in these premises. St. Louis Brewing Association v. Howard, supra; Chance v. Norris, 143 Mo. 235; Huff v. Morton, 94 Mo. 405.

VALLIANT, J.—This is a suit in equity to enjoin the sale of certain land in Grundy county, under a deed of trust, upon the ground that the sale would cast a cloud on the plaintiff's title.

The statements in the petition are to the effect that in 1895 the circuit court of Grundy county rendered a judgment in favor of the city of Trenton, against one F. M.

DeVorss for $100, under which judgment execution issued, and all the right, title and interest of the judgment debtor in the land in question was sold on November 19, 1897, by the sheriff of that county, after due proceedings; that the plaintiff in this suit became the purchaser at such sale, received the sheriff's deed therefor, and immediately took possession of the land and has ever since retained the same; that prior to the sale the judgment debtor, DeVorss, filed a motion in the circuit court to quash the execution on the ground that the land then about to be sold was his homestead, which motion was duly heard, considered and overruled, and that after the sale he moved the court to set the sale aside for the same reason, which motion was also duly considered and overruled; that on March 25, 1897, the judgment debtor with his wife executed to defendant Thompson, curator of defendant Charles DeVorss, a minor, the deed of trust under which the sale sought to be enjoined is threatened; that the deed of trust covers also land in Kearney county, Kansas, and provides that in a sale to foreclose, the trustee must advertise both in Grundy county, Missouri, and Kearney county, Kansas, whereas in fact he advertised the sale only in Grundy county. The point is also made that the Kansas land, being still the property of the grantor in the deed of trust, should be first exhausted, but the trustee is not proceeding to do so, and it is also averred that the deed was without consideration and to cover the property from the grantor's creditors. That a sale would cast a cloud on the plaintiff's title, etc.

The answer admits the judgment, the execution, the sale thereunder, the purchase by plaintiff, the motion to quash the execution, the motion to set aside the sale and the rulings of the court on the same as stated in the petition. It also admits the execution of the deed of trust as pleaded, denying that it was without consideration or that it was fraudulent, and admits that it was about to be foreclosed as stated

in the petition. The answer then sets up affirmatively that
at the date of the judgment under which the plaintiff claims
and for many years prior thereto and continuously on down
to the sale by the sheriff, the land in question was the home-
stead of the judgment debtor, F. M. DeVorss, and not sub-
ject to sale under execution and therefore the deed of trust
was valid; it also avers that the sheriff before making the
sale. did not notify the defendant in execution of his rights
to a homestead, and did not file in the office of the recorder
a notice of such levy, etc., as is required by section 4922,
Revised Statutes 1889 (sec. 3178, R. S. 1899). The reply
joined issue on the new matter pleaded.

On the trial the plaintiff produced in evidence the judg-
ment of the Grundy Circuit Court as pleaded, dated August
31, 1895, which was, on appeal to the Kansas City Court
of Appeals, affirmed, March 22, 1897; the execution and
evidence of sale thereunder and deed to plaintiff; also the
court records on the motions to quash the execution and to
set aside the sale as above stated; also that after paying the
judgment and costs there remained in the sheriff's hands
$229.95, which he paid to the defendant in execution.

The defendants' evidence in support of their plea of
homestead was to the effect that the land in question was
an eighty-acre farm in Grundy county, of value within the
$1,500 limit, which F. M. DeVorss had owned since about
1882 and on which he had resided with his family as a home-
stead for awhile, and, as he testified in general terms, he had
all the time ever since regarded it as his home, though part
of the time it was rented out and DeVorss and his family
lived in Trenton and Hamilton, from 1889 up to 1894, keep-
ing a hotel and a meat market; in 1894 he went back to his
farm and remained there until February, 1897, when he
rented the farm to Bert Brown and went to Jamesport
Springs with his family and kept the bathhouse. While keep-
ing the springs in May, 1897, he (or his wife) bought a

dwelling house in Jamesport on monthly installments and went to live in it.    When he rented the farm to Brown he reserved a room for himself and family and went there occasionally and his wife remained there awhile; his sons were also there occasionally and did some farm work.

The testimony on the part of the plaintiff on this issue was to the effect, that from 1889 to 1894, DeVorss lived in Trenton, Hamilton and Cameron, engaged in various kinds of business, chiefly hotel and meat market; that he went back to the farm in 1894, and remained until February, 1897, when he rented the farm to Brown and moved away to Jamesport, saying that he could not make a living farming and would quit the business; that he reserved a small out-room adjoining the house on the farm in which to store some things that he could not at the time move away, but it was not intended for occupation, was not inhabitable and was not occupied.    Sometime during the year Brown hired DeVorss's wife to come there and cook for him and she remained in Brown's service for several weeks.    By agreement with Brown also DeVorss's boys raised some oats on a small piece of the land; when he rented the farm to Brown, DeVorss took up his residence in Jamesport and was living there with his family when the judgment in favor of the city of Trenton was affirmed by the Kansas City Court of Appeals, and when the deed of trust in question was executed, and he had not lived on the farm since.    The finding and judgment of the circuit court were for the plaintiff and the defendants appeal.

The above is but a brief summary of the evidence which we do not deem it necessary to set out in more detail.    We have read it all carefully and are entirely satisfied that the finding of the chancellor was right on the main question of fact involved, which is conclusive of the plaintiff's right to the relief sought.    At the date of the judgment in favor of the city of Trenton in the circuit court in 1895, the land in

question was the homestead of DeVorss, but the evidence is quite clear that in February, 1897, he abandoned the farm as a homestead, without purpose of returning and never after that resumed occupation of it.

The point is made in the brief of appellant that the homestead once conceded, its abandonment is a fact to be pleaded and proven by him who asserts it. [Bealey v. Blake, 153 Mo. 675.] In the case cited by defendants, which was a suit for partition between the heirs and the widow of a decedent, the fact of the homestead was conceded and the real issue was in relation to the effect of a deed executed by the ancestor and his wife before his death. There was no issue in the pleadings in reference to the abandonment of the homestead and the court held that no such issue was in the case. But the pleadings are different here. The petition sets out a state of facts from which the law draws the conclusion that the judgment under which the sale was made, through which the plaintiff's title comes, was a lien on the land prior to the deed of trust under which defendants claim. Defendants, by a plea of confession and avoidance say that at the date of the judgment, at the date of the deed of trust and at the date of the execution and sheriff's sale, the land was the homestead of the judgment debtor and not subject to the judgment lien; these allegations the reply puts in issue and the contest at the trial was chiefly around those points, the defendants assuming the burden of proof. The case was tried on the theory by both sides that those issues were in the case, and that was the correct theory.

The point is also advanced that, since at the date of the judgment the land was a homestead, no lien attached, and none could attach until the sheriff had filed notice of his levy as required by section 4922, Revised Statutes 1889. [Idem, sec. 3178, R. S. 1899.]

A question on which there has been a diversity of decisions in different States has arisen as to whether a judg-

ment lien attaches at all to land held as a homestead. It is held in some States that it does attach but remains dormant while the actual occupancy of the land as a homestead continues and comes into activity the moment it ceases to be so occupied from any cause. [Thompson on Homesteads, 390-402.] We have construed our statute to mean that the judgment lien does not attach to such land either as against the homesteader or his vendee, so as to render the land in the hands of the vendee liable for the excess in value above the amount allowed as exempt, in a case where the homesteader had sold the land for more than the exempt value (Macke v. Byrd, 131 Mo. 682). In that case it was pointed out that our statute attached the lien of a judgment only to "lands, tenements and hereditaments liable to be sold upon execution" (sec. 3750, R. S. 1899), which was not the condition of lands occupied as a homestead. And it was further shown that if more land in quantity or value was so held the excess could only be reached under execution by following the procedure marked out in the statute for setting out the homestead. But we are not dealing with that question here. We have eighty acres of land, worth less than $1,500, occupied as a homestead at the time the judgment was rendered, but afterwards abandoned by the owner as a home, he taking up his abode elsewhere. Granting that the lien did not attach, while the land was under the cover of the homestead, we see no reason why it did not attach the moment that cover was removed.

The statute declares that the lien shall commence from the date of the judgment and continue three years, but that is intended to fix the period of duration or life of the lien. It does not mean that if there is no property owned by the judgment debtor at the date of the rendition of the judgment against which the lien can attach there shall be no lien, for in the same section it is said: "The lien of a judgment

or decree shall extend as well to the real estate acquired after the rendition thereof, as to that which was owned when the judgment or decree was rendered." [Sec. 3714, R. S. 1899.] We hold that the land in question became subject to the judgment lien as soon as it was abandoned by DeVorss as a homestead, that is, in February, 1897; hence, the plaintiff acquired at the sheriff's sale all the title that DeVorss had thereto in February, 1897. Section 3178, Revised Statutes 1899, has no application to the facts of this case. It has reference to the lien of an execution on personal property, shares of stock, etc., and real estate to which the lien of the judgment did not reach. That does not mean real estate in the county in which the judgment was rendered. Nor does it refer to real estate under cover of a homestead, for while it is so covered, it is not subject to the execution and can not be made so by any act of the sheriff under that section of the statute.

It is also urged that the sheriff's sale was void because he did not give notice to DeVorss that he had the right of a homestead in the land. If the defendant in execution had been entitled to a homestead in the land, 'the sheriff's duty would have been to so inform him, but as he had no such right, the statute in that respect had no application.

There are some other questions discussed in the briefs, but in view of what has been said above as to the homestead claim, they become unimportant.

The judgment of the circuit court is affirmed. All concur.