MARY A. REED, Respondent, v. CITY OF MEXICO, Appellant.

St. Louis Court of Appeals, May 26, 1903.

1. **Damages:** ACTION FOR AGAINST CITY: CITY NOT AN INSURER: STREETS TO BE KEPT IN A REASONABLY SAFE CONDITION. While defendant city was not an insurer of pedestrians using its sidewalks against actual injuries, yet it was the duty of the city to keep its streets in a reasonably safe condition for the use of persons traveling thereon by night as well as by day.

2. ———: ———: ———: DEMURRER TO EVIDENCE: QUESTION FOR JURY. As the instruction in the nature of a demurrer to the evidence asked by defendant admits the truth of all the material facts which the evidence tended to prove, together with all reasonable inferences, the case was properly submitted for determination, by the jury, of the question whether defendant did not have actual notice of the dangerous condition of the sidewalk a sufficient length of time to have repaired it, had it used reasonable diligence to that end.

3. ———: CITY OFFICIALS, POWER OF: ORDINANCE TO CONSTRUCT SIDEWALK. It was not in the power of any city official to modify or change the walk required by the ordinances. That power could only be exercised by the city council by ordinance, and the power to condemn sidewalks for the purpose of reconstruction can only be exercised by ordinance or resolution enacted by the council.

4. ———: VERDICT: ACT OF 1901: CONSTITUTION. The verdict on its face was signed by the foreman, and purported to be unanimous, but the judgment entered thereon recited that only three-fourths of the jurors concurred therein. As the Act of 1901 had not become operative at the time of the trial, and the constitutional amendment of 1900 provides that a verdict can be rendered upon the concurrence of three-fourths of the jurors, the presumption will be indulged in that the trial court acted correctly in matters entering into and forming its judgment.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

AFFIRMED.

*Wm. F. Broadhead, John D. Orear* and *W. W. Fry* for appellant.

(1)   It must be shown either that the city had actual notice of the defect, or that it was so obvious or had existed for such a length of time as to indicate that the city would have known it if it had used proper care in observing the condition of its street.   Even after notice of the defect, the city is entitled to a reasonable time in which to make the repairs, and is not liable until it has neglected such opportunity.   Baustian v. Young, 152 Mo. 317; Carvin v. St. Louis, 151 Mo. 334; Buckley v. Kansas City, 156 Mo. 16; Rudy v. Brewing Co., 161 Mo. 523.   (2)   Plaintiff's witnesses testified the plank they saw was loose in the walk, not outside and obvious.   And the time, place, when and where they saw a loose plank does not correspond with the place where plaintiff was injured.

*Geo. Robertson* for respondent.

(1)   The ordinances relating to the construction of sidewalks were properly admitted in evidence.   Oliver v. Kansas City, 69 Mo. 79.   The doctrine of this case is approved in the following cases:   Beaudean v. City of Cape Girardeau, 71 Mo. 392; Haire v. City of Kansas, 76 Mo. 438.   (2)   Plaintiff's witnesses saw the defective sidewalk and defendant's did not observe it.   Even if there had been contradictory evidence, still it is a matter within the discretion of the trial judge.   Seligman v. Rogers, 113 Mo. 642; Hartpence v. Rogers, 143 Mo. 623; Miles v. Withers, 76 Mo. App. 87.   (3)   Notice may be inferred from the facts and circumstances.   Young v. Webb City, 150 Mo. 333; Baustian v. Young, 152 Mo. 317; Badgley v. St. Louis, 149 Mo. 122; Carvin v. St. Louis, 151 Mo. 334; Bradley v. City of Spickardsville, 90 Mo. App. 416.

REYBURN, J.—This is an action for damages for personal injuries sustained by plaintiff by a fall, alleged to have been occasioned by the defective condition of a sidewalk on Monroe street, a prominent thoroughfare of defendant. The action was brought in the circuit court of Audrain county, but the venue was changed to the circuit court of St. Louis county, where a trial was had by jury, which awarded a verdict of twenty-five hundred dollars in favor of plaintiff. The plaintiff, a married woman, at the time of the accident was in her fifty-fifth year, and had been the mother of five children. From early childhood she had resided in Mexico until seven years preceding the trial, during which she resided in Moberly; she was rather tall, and up to the time of the injury had been healthy and of 148 pounds' weight. About dark on October 25, 1901, in company with two other ladies, plaintiff was walking westwardly on Monroe street, one of the principal highways of defendant, on her way to the depot to return home, when, as described by her, she stepped on the end of a plank in the wooden sidewalk and it flew up or went down, and her ankle caught in the hole and she fell off the walk to the ground on the south side, sustaining injuries, painful, serious and probably permanent; impairing her general health and leaving her in a crippled and emaciated condition.

The walk was four feet wide, constructed in June, 1898, of new pine plank, two inches thick, four inches wide, nailed to three oak stringers, at each end and in the center, with the ends extending about two to three inches beyond the side stringers: at the west end, the wooden walk joined a ten-foot granitoid pavement, and the place of the misadventure was about seven feet east of the granitoid walk.

The answer was a general denial, united with a plea of contributory negligence, consisting of the allegations that she was walking in a rapid manner, hastening to meet a train, on the outer edge of the sidewalk with

her two companions abreast, and that in her haste she carelessly walked too near the edge of the walk and slipped or stepped off the sidewalk.

1.   The evidence introduced by plaintiff strongly tended to show that two or three boards had been detached, and were loose and had been out of the walk for a period varying in the estimates of the witnesses, from two weeks to thirty days.   At the close of the evidence offered by plaintiff, the defendant presented a demurrer to the evidence which was overruled.   The whole testimony was conflicting, especially in respect to the condition of the sidewalk involved; but numerous witnesses testified to the imperfect condition for a period ranging from two to four weeks or longer, preceding the accident.   The defendant is not an insurer of pedestrians using its sidewalks, against accidental injuries, but it was the duty of defendant to keep its streets in a reasonably safe condition for the use of persons traveling thereon by night as well as by day. Reedy v. Brewing Ass'n, 161 Mo. 523; Baustian v. Young, 152 Mo. 317; Carvin v. St. Louis, 151 Mo. 334. No fixed rule can be established, as to the exact length of time the imperfection must have continued to justify the presumption of knowledge in time to have been remedied before the accident occurred, but each case must be controlled by the facts peculiar to it.   Such period would necessarily vary and depend on how conspicuous the infirmity might be, and the volume of travel upon or extent of the use of the street in question. Young v. Webb City, 150 Mo. 333; Smith v. Thompson (Mo. Sup. Court), 69 S. W. 1040.

Measured by the well-established test that the imperative instruction prayed conceded the truth of all material facts which the evidence tended to prove, together with all inferences in favor of plaintiff that might be fairly and reasonably drawn from the evidence, this case was properly submitted for determination by the jury, of the issue whether under the testi-

mony of plaintiff's witnesses, if defendant did not have actual notice of the dangerous condition of the sidewalk, the defect had endured for a length of time sufficient to justify the presumption that defendant had actual knowledge of it, or, in the exercise of reasonable diligence, might have known of it. Buckley v. Kansas City, 156 Mo. 16; Young v. Webb City, 150 Mo. 333.

2. At the close of all the evidence the court, of its own motion, gave one instruction, and at request of plaintiff gave six instructions; the defendant asked nineteen instructions of which the court gave twelve, but refused the remaining seven.

In the course of the trial plaintiff introduced the municipal ordinances of the defendant especially defining the duties of officials, establishing the corporate fire limits, and providing that within such territory the various owners of lots should construct and maintain in repair paved sidewalks in front of their respective lots of the width of ten feet, composed of granitoid, brick of the quality designated, paving tile or stone. Defendant objected to the admission of these enactments and now insists that their admission was fatal error, or if admissible their effect should have been confined by the instructions asked of its behalf.

Municipal corporations exercise functions of a twofold character; one class embraces those pertaining to corporate interests and proprietary or measurably private rights and are ministerial; the other class comprises those delegated to it in its governmental capacity, and involves rights and duties of a legislative or judicial nature. In the exercise of the latter, municipal corporations are supreme and act without incurring liability; but in enforcing the former, which extend to the construction and maintenance of highways, such corporations put in operation powers, ministerial and private in character, for default in the proper performance of which legal liability attaches. In the preliminary consideration of public work to determine its ex-

pediency, extent and the general method of its performance, municipal corporations exercise their judicial and discretionary powers and are relieved of responsibility; but the actual execution and construction of such work and its maintenance are ministerial acts and undertakings for which the corporation may be held responsible in a civil action for damages caused by its failure to execute and perform them in a careful manner. These distinctions between legislative or judicial powers, and rights and powers purely ministerial, are well established in this State, and generally recognized in other jurisdictions. Donahoe v. Kansas City, 136 Mo. 657; Armstrong v. City of Brunswick, 79 Mo. 319; Dillon, Mun. Corp. (4 Ed.), secs. 66-1017; Jones, Neg. of Mun. Corp., sec. 140.

Upon this branch of the case defendant asked an instruction as follows:

"22. The court instructs the jury that the ordinances of the city of Mexico introduced in evidence shall only be considered by you as tending to show that said city deemed it expedient that such a walk as described therein exist at the places therein specified, and said ordinances are not to be taken by you as showing any negligence on the part of said city or as holding said city liable in this action for any injury, if any, defendant may claim to have received."

The court refused this instruction but gave the following of its own accord:

"1. The court instructs the jury that the ordinances of the city of Mexico, introduced in evidence by the plaintiff, providing for the kind and manner of construction of sidewalks in the district where the plaintiff was injured, are introduced only for the purpose of tending to show admissions on the part of said city of the kind of sidewalks which ought to be constructed in said district at the place of the accident, but the city was not bound to construct sidewalks according to said ordinances; and the jury are instructed that no neg-

ligence can be imputed to or charged against said city merely from the fact that it may appear from the evidence that said sidewalk at the place of the accident was not of the kind, or was not constructed according to such ordinances; but the fact, if it be the fact, that said sidewalk was not constructed according to said ordinances may be considered in connection with all the other evidence in the case in determining whether, in fact, the defendant was negligent."

This evidence was proper for the purpose of establishing that the convenience of the public required the location involved to be equipped with sidewalks for public travel; that defendant was exercising control over the highway, and the extent of the duties of the municipal officers to whom supervision of the streets was delegated; but by the instruction given by the court of its own motion, the jury were informed that negligence could not be imputed to defendant merely from the fact that the sidewalk, at the place of the accident, was not made in compliance with the ordinances, yet such fact might be weighed in connection with all the other evidence in determining whether the defendant was negligent. It was not in the power of any of the city officials to modify or change the walk required by the ordinances. The power to order the construction of a new sidewalk given to the city council, can only be exercised by ordinance (R. S., sec. 5860), and the power to condemn and order the reconstruction of a sidewalk can only be exercised by ordinance or resolutions enacted or adopted by the city council (R. S., sec. 5862). Rumsey Mfg. Co. v. Schell City, 21 Mo. App. 175; Heidelberg v. St. Francois County, 100 Mo. l. c. 74.

When a city council, by ordinance, has directed the construction of a sidewalk of a specified width and designated materials, and thereafter permits one to be constructed and to continue in use of a much less width and of greatly inferior material and differently con-

structed to the one ordered, it seems to us that this remissness in the duty of enforcing its own ordinance would be some evidence of negligence. What the city council deemed to be a good and sufficient walk, safe and adequate for the travel on Monroe street in the city of Mexico was described by the ordinance, and the fact that after the passage of this ordinance the council permitted a walk greatly inferior in dimensions, construction and material to be constructed, remain on the street and to be used, in our opinion is some evidence that the walk on which plaintiff was injured was deemed by the city council to be such a walk as was not safe and adequate for the travel over that particular street. If so, then it was negligence to permit the walk to be thus constructed or to so remain after its construction, and we find no fault in the instructions given by the court to the effect that this fact was some evidence of negligence on the part of the city.

3. The instruction asked by defendant regarding the right of the jury to disregard the entire evidence of any witness they believed had willfully sworn falsely to any material fact, is not justified by mere difference and conflict in the testimony of witnesses in ordinary jury trials, and it has been intimated that such instruction approaches dangerously near to a comment upon the evidence, and rarely facilitates a jury in arriving at a proper verdict. Hartpence v. Rodgers, 143 Mo. l. c. 634; Henry v. Railway, 109 Mo. l. c. 495; Miles v. Withers, 76 Mo. App. 87. A careful review of this record does not warrant the conclusion that the judicial discretion of the trial court was abused in the declination of this instruction, or that the cause should therefore be remanded for a new trial.

4. The form of the verdict was general and unanimous on its face and signed by the foreman, but the judgment entered thereon recited that three-fourths of the jurors, but not all, concurred therein. The Act of 1901 had not become operative at the time of the trial

(Session Acts 1901, p. 190); and the constitutional amendment adopted at the general election of 1900, was in force by which a verdict could be rendered upon the concurrence of three-fourths in number of the jurors (Acts of 1899, p. 381), and the presumption will be indulged in that the trial court was acting properly in the matters of its own record and entry of judgment.

5. The remaining point made involves the misconduct attributed to the jury, consisting especially of charges of intoxication, and the acts of individual members in accepting refreshments at cost of and conversing with parties in sympathy with plaintiff. This feature of the case is exhibited by numerous affidavits, pro and con, including a separate affidavit by each juror denying generally any misbehavior, and on the part of four jurors specially assailed, explanatory of their conduct. The granting of a new trial on such ground is committed largely to the judicial discretion of the trial court, and to justify our interference, an abuse of such discretion must be apparent, which is not disclosed in this case. Kennedy v. Halladay, 105 Mo. 24; Morgan v. Ross, 74 Mo. 318.

No reversible errors being presented, the judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.