LOTTIE IRWIN, Respondent, v. KANSAS CITY et al., Appellants.

Kansas City Court of Appeals, June 30, 1913.

1. **NEGLIGENCE: Defective Sidewalk: Notice to City: Jury Question.** Where there was evidence that the iron cover to a coal hole in the sidewalk at a busy and populous part of the city was removed in the morning to afford air to employees of a business house working in the basement, and the hole insecurely covered with loose boards, and plaintiff in passing persons on the street, without negligence on her part, fell into said hole and was injured about 1:30 in the afternoon, the question of whether the city had reasonable time in which to discover and remedy the defect before the injury, was properly submitted to the jury.

2. ———: ———: ———. Whether a defect has existed for such a length of time as to constitute negligence or justify the submission of that question to the jury depend much upon the

surrounding circumstances. If it is at a point where the city's activities concentrate, the city is called upon to use increased care, and a less time would be required there than elsewhere.

3. ———: ———: ———: **Instructions.** Where only a moment's time would be required to remedy the defect an instruction which allows the city reasonable time in which to discover the defect by the exercise of ordinary care but does not clearly state that it also has a reasonable time in which to remedy the defect after knowledge thereof, is not reversible error where the time shown is ample both to discover and remedy the defective condition.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*A. F. Evans, Jas. W. Garner,* and *F. M. Hayward* for appellants.

*Chapman & Hanger* for respondent.

TRIMBLE, J.—The plaintiff sued a partnership and the city to recover damages caused by stepping into a coal hole in the sidewalk on the south side of Twelfth street near the southeast corner of Twelfth and Walnut in Kansas City, Missouri. This coal hole was near the center of the sidewalk and in front of the business house of the defendant partnership. It had for a cover an ordinary iron lid, but the partners used the basement as a room for dishwashing, and were in the habit of removing this lid each morning and leaving it off during the day to let air into the basement.

Plaintiff testified that, at the time she was hurt this iron lid was off and the hole was covered with loose boards on which was set a spiral wire frame, or basket without bottom, not fastened in any way. She testified that she did not know the hole was there, that many persons were passing that point and that when she met some pedestrians on the street at that point,

their presence prevented her seeing the hole, and when she attempted to pass these people, her right foot struck the boards, which easily moved to one side causing the wire to roll off into the street and her right foot and leg to go down into the hole throwing her violently to the pavement and seriously injuring her.

The partnership defendants in their testimony admitted that the hole was there, that plaintiff fell in, that they had removed the regular lid for ventilation, but that the hole was protected by an arrangement of boards resting horizontally across the hole with perpendicular boards sticking down into the hole and extending about two feet above the sidewalk, the whole so securely bound together with wire as to constitute a complete cover for the hole and rendering it impossible for plaintiff to fall into the hole and be injured thereby. Nevertheless the fact cannot be gainsaid that plaintiff did fall therein and was injured.

The regular lid for the hole was not defective in any way and was there where it could have been replaced in a moment's time, and was usually put on at night. The hole was round and about 18 inches across. There was testimony that the lid was taken off in the morning, and, in addition to this, one of the partners testified that they usually took it off about seven o'clock in the morning and that he did so at that hour on the day in question, which was the 30th of June, 1908. This evidence by the partner as to the precise hour it was taken off was excluded as against the city but was admitted as against the partnership. We presume that the reason it was excluded was because the city was not notified of the taking of the deposition. The objection to the evidence of the partner was simply on the ground that the city was not present when the deposition was taken. Objections to conversations between plaintiff and the partner had been sustained as to the city and when the partner's deposition was read, the court sustained an objection to it as to the

city. The testimony of the partner, however, would
be competent against the city unless the city had no
notice of the taking of the deposition. The presump-
tion is in favor of the correctness of the ruling of the
trial court, and we will treat the case as if there is no
testimony in the record other than the testimony of
Mrs. Shields who said the hole was opened "sometime·
in the morning" but she did not know the precise
hour, and that it was open during the daytime prior
to the day of the accident. In-as-much as it was
opened to give air to the employees working in the
basement on a warm day in the hot summer time, we
can assume that it must have been opened early in
the morning. Such an inference is reasonable or at
least was sufficient to render it incumbent upon de-
fendants to show that it was not opened till later, if
that was the fact.

The point in the street in question is one of the
busiest and most crowded and travelled parts of the
city. The Twelfth street car lines and the Walnut
street car lines cross at that corner and there is constant
passing back and forth on the sidewalk at the place
of the accident. The injury occurred at 1:30 p. m.

The jury found for plaintiff, and against all the
defendants, in the sum of $1000. Only the city has
appealed.

There are three errors complained of. The first
is that plaintiff's third instruction tenders an issue
not included in the pleadings. This contention is based
on the fact that the petition alleges that the lid was
off and the hole negligently covered with boards laid
loosely across while the instruction included, in addi-
tion to the boards, a coil of wire. But we do not think
a new *issue* was thereby tendered. Of course, the
instruction must not contain an issue not included
within the pleading. But the issue was whether the
coal hole was negligently permitted to remain open
or imperfectly covered so as to be dangerous to passing

pedestrians. The defendant partners had testified that in the hole there were upright as well as horizontal boards, and that all were bound together with wire. The plaintiff testified that she saw a coil of wire like a wire basket with an open bottom, roll into the street when her foot struck the boards but that it was merely sitting on the boards and in no way fastened thereto. The instruction in substance told the jury that if said hole was negligently left unsafe and insecurely covered with loose boards merely laid down over the hole and not in any way secured "and with a coil of wire set on said boards," and that said covering did not render said sidewalk reasonably safe for travel and that plaintiff, while using ordinary care and not knowing of said condition, fell into said hole and was injured, then she was entitled to recover. The addition of the words "and with a coil of wire set on said boards" did not add a new issue. The issue was whether or not the hole was securely or insecurely covered, whether with boards, wire, or anything else, and whether the sidewalk was reasonably safe for travel.

The next point is that error was committed in plaintiff's instruction No. 4 because it did not inform the jury that the city was entitled to a reasonable opportunity, after having knowledge of the defect, in which to put back the cover or make the hole safe. The right of "reasonable opportunity" to properly cover the hole means nothing more than a "reasonable time in which to remedy the defect." Under the evidence in this case the only remedy required was to replace the iron cover that was there, which could be done the moment knowledge of the insecure covering of the hole was received. It is not like a case where a defective condition must be repaired and a reasonable time must elapse to enable that to be done. But, even so, the instruction says that the verdict can be against the city only in the event that the city knew, or, by the exercise of ordinary care, could have known of the

unsafe condition "in time to have made it safe before the alleged accident." In this case this is equivalent to saying the city must have a reasonable time to repair. [Wright v. Kansas City, 187 Mo. 678, l. c. 693.] The instruction is not open to the objection made, since the repair could have been done in an instant. Nor can it be said that there was no evidence from which the jury could infer that the city had a reasonable time in which to learn of the defect and remedy it. The hole had been there for twenty years. And it had been used as a ventilator of the basement before that day. On that day it had been open from some hour in the morning till one-thirty in the afternoon at a spot in a business center of the city where there was a great deal of travel. Whether the defect has existed for such a length of time as to constitute negligence or justify the submission of that question to the jury depends much upon the surrounding circumstances. What might be negligence in not knowing of a dangerous walk at one locality would not be at another, but if it is at a point where the activities of the city concentrate, the city is called upon to use increased care, and a less time would be required there than elsewhere. [Carrington v. City of St. Louis, 89 Mo. 208.] No fixed rule can be established as to the exact length of time a defect must have continued to justify the presumption of knowledge in time to have remedied it before the injury occurred, but each case will depend on the facts peculiar to it. Such period would necessarily vary and depend on the conspicuity of the defect and the amount of travel upon or extent to which the street is used. [Reed v. City of Mexico, 101 Mo. App. 155, l. c. 158.] In Beauvais v. City of St. Louis, 169 Mo. 500, l. c. 505, the Supreme Court approved an instruction containing these words: "And in a much-traveled street, if a defect existed which the jury believe from the evidence was easily to be seen, the existence of such a defect for only a few

hours might justify the jury in the inference of knowledge on the part of the city of such defect, or that by reasonable diligence it could have acquired such knowledge in time to have repaired it before the accident." The objection is not well taken and the case was sufficient to go to the jury.

Defendant's third and last objection is to plaintiff's instruction No. 1. The claim is that it requires the city to exercise a higher degree of care than ordinary care to keep its sidewalks reasonably safe for travel. We do not think the instruction does this. In fact, the instruction is not dealing with the care required of the city but only with the right of plaintiff to presume, in the absence of knowledge to the contrary, that the street was reasonably safe. Wherever the care required of the city was mentioned in plaintiff's other instructions it was described as ordinary care, and the jury were told that the city was not an insurer of the safety of its citizens, nor required to keep its streets absolutely safe but only to keep them in a reasonably safe condition. We do not think the instruction complained of dealt with the degree of care required by the city, but, even if it could be so considered by a critical and hair splitting discrimination, it could not have misled the jury. And were we to reverse and remand the case on this ground we would be going contrary to Sec. 2082, R. S. Mo. 1909. There are no objections going to the merits of the case, and, not finding any prejudicial error in the record, it is our duty to affirm the judgment of the trial court. It is so ordered.   All concur.